## Sehas Appeal

*Harold Kaminsky*, for appellants.

*Walter A. Criste*, for Commonwealth.

McDONALD, J., February 27, 1960.—Agapetos and Mary Sehas, trading as Mulvehill Distributing Company, appellants, have operated an importing distributor business under license from the Pennsylvania Liquor Control Board, hereinafter referred to as the board, at premises 707 Broad Street, Johnstown, Cambria County, for a great number of years. On September 23, 1958, the board issued citations numbers 879, 880, charging appellants with violations of the Liquor Code as follows:

(1) Sales of malt or brewed beverages on credit;

(2) Receipt of loans from a restaurant liquor licensee;

(3) Falsification of the records;

(4) Employment of a person also employed by another licensee.

Hearings were held on the citations and the board by opinion found that the cited charges, with the exception of falsification of the records, were sustained. In accordance with this opinion, an order revoking the license was made on June 9, 1959. This matter is now before the court on appeal from that order.

Since the violations alleged in each citation are numerous, but can be consolidated as to type of transaction, we shall discuss each category separately.

(1) Credit sales

(a) To Heider's Tavern

An examination of the records of Heider's Tavern, a retail licensee, indicates that 121 purchases of malt beverages were made from appellants between the period October 3, 1957, and May 31, 1958. However, because on occasions several invoices were paid by one check, only 81 transactions are noted. Of these the board contends 79 were credit sales.

During the above period, 79 checks in payment of invoices for the purchase of malt beverages were marked "not sufficient funds" by Heider's bank. At no time were they returned to the deposit bank, nor was appellants' account charged with the amount of each check. Appellants did not receive notice that any of the checks were so marked. The usual procedure employed by Heider's bank, since his credit rating was excellent, was to notify him that there were insufficient funds in his account to pay it. He would then either deposit that amount, or transfer it from another account. This is not an unusual banking practice where the maker of the check has credit. When this procedure was revealed on the record during the hearing, counsel for the board did not go forward with itemization of the alleged credit sales. Therefore, the 79 citations of credit sales to Heider's Tavern between the dates of October 3, 1957, to May 31, 1958, are dismissed because of insufficient evidence.

It is noted that of these, check no. 390, dated October 10, 1957, was deposited on October 4, 1957, and returned because it was post-dated. It was later redeposited and paid. An examination of Heider's check book indicates the stub for this check was in a position where it should have been dated October 3, 1957, the date of purchase. We conclude therefore it was erroneously dated.

(b) To German-Austrian Musical and Beneficial Association

The testimony of the board's enforcement agent indicates that during the period October 26, 1957, to April 26, 1958, there were 26 purchases of malt beverages by William Huss, steward of this organization. Payment was made by his personal check since, under his employment with the association, he made a monthly accounting. Fifteen of these checks were re-

turned to appellants marked "not sufficient funds". Of these, nine were redeposited and paid, four were redeposited twice, one three times and one five times. On three occasions checks which had been redeposited were paid in cash. The time from invoice date to payment of the checks ranged from six days to 14 days, depending on how soon or how often the redeposits were made.

In our opinion, considering the number of checks which were returned to appellants marked insufficient funds, we must conclude the course of business so conducted was in fact an extension of credit. Therefore, we sustain the board's findings of fact that 15 sales of malt beverages by appellants to German-Austrian Musical and Beneficial Association were credit sales.

(c)  To Gladys Cafe

The testimony of the board's enforcement officer indicates that 35 sales of malt beverages were made to this licensee during the period January 24, 1958, to May 2, 1958. Of these, the invoices were marked paid on the date of delivery; however, the cash disbursement book of the licensee, Gladys Cafe, showed entries in each instance of a later date than that of the invoice.

Joseph Gladys, who testified at the hearing before the board's examiner, stated he had paid cash for the beverage at time of delivery. Prior to the hearing on this appeal, Mr. Gladys died; however, his testimony before the examiner was admitted as part of the record in this court.

Carl Gladys, minor son of the deceased licensee, testified he had made the book entries on the date his father gave him the invoices. He had no knowledge of the date of payment. In several instances the cash book discloses that even though invoices showed pur-

chases of several different dates, payment was noted on one date because the invoices had been handed to Carl on that particular date.

There is no evidence produced by the board that any of the alleged sales were on credit. The mere fact that entries in a licensee's cash book were dated later than the invoices, while some evidence of payment at the date of entry, is not conclusive. Particularly so, when the licensee called by the Commonwealth as a witness testified that he had made payment of the invoices at the time of delivery. The testimony reveals that the books were inexpertly kept by a young man who merely entered the payments on the dates the invoices were handed him without relating them to the actual date of payment. We therefore conclude the evidence is insufficient to sustain the 35 citations of credit sales to Gladys Cafe on the dates alleged.

(2) Loans received from Alex Heider, a restaurant liquor licensee trading as Heider's Tavern

It was testified by the board's enforcement officer that between the period October 1, 1957, to April 28, 1958, 233 checks totaling $86,730.98 were drawn on the personal account of Alexander F. Heider to cash and endorsed by appellant, A. C. Sehas. Of these checks, 74 totaling $21,109.74 and ranging in amounts from $50 to $750 were deposited in the Mulvehill Distributing Company account. The remaining 159 checks ranging in amounts from $83.06 to $900 were cashed by appellant at a bank. The board contends and has found as a fact, that these transactions were loans by Alexander F. Heider, a restaurant-liquor licensee, to appellants.

Shirley Ickes, former bookkeeper for appellants, testified that on several occasions she had observed Mr. Sehas cash checks for Mr. Heider by handing him money from his pocket. At such time at the close of

the day's business, Mr. Sehas would then endorse the check and have her cash it from the daily receipts. These checks would then appear on her deposit slip in place of cash receipts. She said the transaction, in such instances, had nothing to do with the business and to her knowledge no funds or loans were received from Mr. Heider. She further testified that appellants maintained an average inventory of $35,000 to $50,-000 and owned four trucks, one of which had been purchased for $18,000 and sold during the period of the citations for $5,000.

Mary Sehas, one of appellants, testified she and her husband owned a home valued at $25,000 with an encumbrance of $1,000, that they had been offered $55,000 for the business premises but refused, that they had open credit accounts at two banks in the amount of $6,000.

The Liquor Code of April 12, 1951, P. L. 90, sec. 411, 47 PS §4-411(e), provides, inter alia, that a restaurant licensee shall not be interested directly or indirectly "in the ownership or leasehold of any property or the equipment of any property or any mortgage lien against the same, used by a . . . importing distributor . . . nor . . . either directly or indirectly, lend any moneys, credit, or give anything of value or the equivalent thereof, to any . . . importing distributor . . . for equipping, fitting out, or maintaining and conducting, either in whole or in part, an establishment used in the conduct of his business". It is further provided in the aforesaid section, that its purpose is to require a separation of the financial and business interests between retail licensees and distributors and that no person shall by device evade the provisions of the section.

Section 443(f) of the code provides that "no . . . importing distributor, . . . shall in any wise receive,

either directly or indirectly, any credit, loan, moneys . . . from any other licensee . . . for equipping, fitting out, payment of licensee fee, maintaining and conducting, either in whole or in part, . . . [his] business".

The record fails to disclose the dates of checks drawn by Heider and endorsed by appellant A. C. Sehas. The only testimony is that of the enforcement agent who states that over a certain period the checks were cleared through a bank. There was no effort by the board to show that Heider did not receive cash for the checks or if not, that the funds for the checks, or any of them, were used in appellants' business. We may not conjecture that a series of transactions between these men, friends of long standing, represented loans by a retail licensee to appellants. It is the burden of the board to show by a preponderance of the evidence that provisions of the code were violated. The evidence upon which a finding must be based should at least relate each transaction to the date averred in the citation. Failing in this, we may not conjecture that the transactions, or any of them, represented loans, however suspicious the circumstances. This is particularly so, when appellants apparently are people of means with an established credit in two banks. Another circumstance is the fact that 66 percent of the checks were not cleared through appellants' business account, but were cashed at the bank. Of the 34 percent which appeared in the business account there is testimony by the bookkeeper, Shirley Ickes, a witness for the board, that they were cashed by her for Mr. Sehas from daily receipts.

The investigating officer by audit procedures could have discovered, if such were a fact, that the 74 checks which cleared through the business account were not cashed from daily receipts by a simple review of the

daily record on each date a check appeared in the deposit. While this would have required detailed testimony, it was necessary if this court is to draw a reasonable inference that the funds from the checks were in fact a loan and used by appellants for the conduct of their business. An audit of appellants' books, reconciling inventories, receipts and disbursements, would also have disclosed, if such were a fact, that the money represented by these checks was used in the business. It would be difficult if not impossible to secrete such a large amount of money used in a business the size of that conducted by appellants.

While we do not condone dealings between distributors and licensees, personal or otherwise, because of the suspicion which naturally arises, we cannot conclude on the basis of this record that these transactions were business loans by Heider, a retail licensee, to appellants. In view of the evidence, strengthened by numerous reputable character witnesses, it is more consistent with the facts to conclude they were personal dealings between the parties.

We therefore dismiss for insufficient evidence those citations, 120 in number, which charge that appellants received loans from another licensee.

(3) Employment of a person employed by another licensee

The citations charged that appellants employed a person who was employed by another licensee during the periods November 3, 1957, to January 31, 1958, and January 31, 1958, to April 26, 1958. The board's enforcement officer testified that payroll records of appellants and Perfection Beverage Company, another licensed distributor, disclose that Shirley Ickes was employed by appellants during the period September 18, 1954, to August 22, 1958, and by Perfection during the period November 1, 1957, to April 30, 1958. She

received as gross wages the sum of $40 per week from the appellants and $75 per month from Perfection during the periods aforesaid. She was employed part time by Perfection and according to information given to the enforcement officer by Miss Ickes and later testified to in court during the hearing on this appeal, she worked on the books of that company during her spare time at home. It was further testified that when appellants were informed of her employment by Perfection, Mr. Sehas stated he had no knowledge of it, but would immediately insist that she terminate her employment at either place.

Miss Ickes testified she worked on the Perfection books at home, that when Mr. Sehas learned of her employment by another licensee, he informed her she would have to make an immediate selection of which employment she would continue. On that date she obtained the Perfection books which were at her home, returned them and terminated her employment with that firm.

Under article IV, sec. 493(11), of the code, it is unlawful for the employe of any licensee to be employed at the same time by another licensee.

In this case the employe was unaware of the unlawfulness of her act, nor did appellants have any knowledge or reasonable cause to know that a violation was being committed. While the wisdom of the regulation is undisputed, we are satisfied that under the circumstances it would be unjust to penalize appellants for an act of their employe, committed innocently on her part, of which they had no knowledge or reasonable ground to suspect was occurring. The prompt action of appellants in requiring that a choice of employment be made, was, in our view, consistent with the attitude of licensees who wish to abide by the provisions of the code and the rules and regulations of the board.

384

We therefore dismiss the citation charging that appellants employed a person also employed by another licensee during the period specified. . . .

*Order*

Now, February 27, 1960, after hearing de novo it is hereby ordered and decreed that the order of the Pennsylvania Liquor Control Board dated June 9, 1959, revoking effective July 3, 1959, the importing distributors license no. 1D-369 issued to Agapetos and Mary Sehas, trading as Mulvehill Distributing Company, for premises no. 707 Broad Street, Johnstown, Cambria County, be and hereby is reversed.

And it is further ordered and decreed that the importing distributors license issued to Agapetos and Mary Sehas, trading as Mulvehill Distributing Company for the aforesaid premises, be and hereby is suspended for a period of 20 days. This order shall become and be effective at 7 a.m., March 15, 1960, and ending at 7 a.m., April 4, 1960.